**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

James T. Briand

  v.                                                    Civil No. 14-cv-425-LM
                                                                Opinion No. 2015 DNH 131
Carolyn W. Colvin, Acting
Commissioner, Social
Security Administration

**O R D E R**

  Pursuant to 42 U.S.C. § 405(g), James Briand moves to

reverse the Acting Commissioner's decision to deny his

application for Social Security disability insurance benefits,

or DIB, under Title II of the Social Security Act, 42 U.S.C. §

423, and for supplemental security income, or SSI, under Title

XVI, 42 U.S.C. § 1382.  The Acting Commissioner, in turn, moves

for an order affirming her decision.  For the reasons that

follow, this matter is remanded to the Acting Commissioner for

further proceedings consistent with this order.

**I. Standard of Review**

  The applicable standard of review in this case provides, in

pertinent part:

> The [district] court shall have power to enter, upon
> the pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without
> remanding the cause for a rehearing.  The findings of
> the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive
> . . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB decisions); see also 42 U.S.C. § 1383(c)(3) (establishing § 405(g) as the standard of review for SSI decisions). However, the court "must uphold a denial of social security . . . benefits unless 'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Acting Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts." Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)). In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). But, "[i]t is the responsibility of the [Acting Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Acting

Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (citations omitted). Moreover, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988). Finally, when determining whether a decision of the Acting Commissioner is supported by substantial evidence, the court must "review[ ] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## II. Background

The parties have submitted a Joint Statement of Material Facts, document no. 13. That statement is part of the court's record and will be summarized here, rather than repeated in full.

Briand has received multiple diagnoses of his physical condition, including these: mild bilateral knee osteoarthritis, bilateral leg peripheral vascular insufficiency, obesity, and type II diabetes mellitus.[1]  One of the long term complications

---

[1] Briand has also received several mental health diagnoses, but because he is entitled to a remand based upon the way the ALJ handled the effects of his physical impairments, the court need not address his mental impairments.

of diabetes mellitus is neuropathy.[2]  Stedman's Medical
Dictionary 529 (28th ed. 2006).

   In a Disability Determination Explanation ("DDE") completed
in December of 2013,[3] non-examining state consultant Dr. Hugh
Fairley determined that Briand had three severe impairments:
chronic venous insufficiency, obesity, and peripheral
neuropathy.  The DDE also includes Dr. Fairley's assessment of
Briand's physical residual functional capacity ("RFC").[4]
According to Dr. Fairley, Briand had the RFC to: (1) lift and/or
carry 20 pounds occasionally and 10 pounds frequently; (2) stand
and/or walk for a total of about six hours in an eight hour
workday; (3) sit for a total of about six hours in an eight hour
workday; and (4) push and/or pull without any limitation other
than the limitation on lifting and carrying.  Dr. Fairley also
determined that Briand needed to "periodically alternate
[between] sitting and standing to relieve pain and discomfort."

---

   [2] Neuropathy is "a disease involving the cranial nerves or
the peripheral or autonomic nervous system."  Stedman's, at
1313.

   [3] The Administrative Transcript actually includes two DDEs,
one for Briand's claim for DIB, see Administrative Transcript
44-55, and one for his claim for SSI, see id. at 56-67.  The two
DDEs are virtually identical.

   [4] "Residual functional capacity" is a term of art that means
"the most [a claimant] can still do despite [his] limitations.
20 C.F.R. §§ 404.1545(a) & 416.945(a).

Administrative Transcript (hereinafter "Tr.") 51, 63.  He
further specified: "Change stand to walk/sit 1/2 hrly for a few
minutes."  Id.  With respect to postural limitations, Dr.
Fairley found that Briand could: (1) occasionally climb ramps
and stairs, balance, stoop, kneel, crouch, and crawl; and (2)
never climb ropes, ladders, or scaffolds.  Dr. Fairley reported
no manipulative, visual, or communicative limitations, but with
respect to environmental limitations, reported that Briand
needed to avoid: (1) concentrated exposure to extreme
temperatures and vibrations; and (2) all exposure to "[h]azards
(machinery, heights, etc.)," Tr. 52, 64.

In February of 2014, Tricia Aiston, an Advanced Practice
Registered Nurse, wrote a letter directed to whom it may concern
in which she stated: "James Briand . . . has medical issues and
ongoing chronic pain in [both] knees making it difficult to
ambulate.  Patient is unable to work due to instability to
[both] knees."  Tr. 296.

Before issuing his decision on Briand's claim for benefits,
the ALJ conducted a hearing at which he heard testimony from a
vocational expert ("VE").  In a question he posed to the VE, the
ALJ described the following hypothetical worker:

> And the hypothetical is to assume that we have a 49
> year old with a twelfth grade education who can lift
> 20 pounds occasionally, 10 pounds frequently, stand or
> walk for six, sit for six, unlimited use of his hands

and feet to operate controls and push and pull.
Should never climb ladders, scaffoldings, or ropes.
The remaining posturals are at the occasional level.
Should avoid concentrated exposure to extreme
temperature and vibration and avoid exposure to
unprotected heights.

Tr. 38. The hypothetical the ALJ posed to the VE said nothing about the sit/stand option that Dr. Fairley included in his RFC assessment and that is uncontroverted by any other medical opinion in the record. Based upon the foregoing hypothetical, the VE testified that Briand had the capacity to perform the jobs of hand cutter (a job that he had held in the past), fast food worker, cleaner, and price marker.

After the hearing, the ALJ issued a decision that includes the following relevant findings of fact and conclusions of law:

3. The claimant has the following severe impairments: osteoarthritis (bilateral knees, mild); and obesity (20 CFR 404.1520(c) and 416.920(c)).[5]

. . . .

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

. . . .

5. After careful consideration of the entire record, the undersigned finds that the claimant has the

_____

[5] The ALJ expressly declined to find that Briand's neuropathy was a severe impairment and said nothing one way or the other about Briand's venous insufficiency.

residual functional capacity to perform light work as
defined in 20 CFR 404.1567(b) and 416.967(b).  He is
unable to climb ladders, ropes and scaffolds, ramps
and stairs, and he is limited to occasional balancing,
stooping, kneeling, crouching and crawling and
climbing ramps and stairs.  He must avoid concentrated
exposure to extreme temperatures and vibrations, as
well as hazards, such as dangerous machinery and
unprotected heights.[6]

. . . .

6.  The claimant is able to perform past relevant work
as a hand cuter (20 CFR 404.1565 and 416.965).  This
work does not require the performance of work-related
activities precluded by the claimant's residual
functional capacity (20 CFR 404.1565 and 416.965).

Tr. 14, 16, 17, 20.  The ALJ's RFC finding does not include the

sit/stand limitation that Dr. Fairley included in his RFC

assessment.  Additionally, the narrative section of the decision

in which the ALJ explains his RFC finding says nothing about

that limitation.  Finally, even though the ALJ determined that

Briand retained the RFC to perform his past relevant work as a

hand cutter, he went on to determine that Briand was also able

to perform the jobs of fast food worker, cleaner, and price

marker.

---

[6] This RFC finding includes a contradiction as it posits
both an inability to climb ramps and stairs and an ability to do
so occasionally.  Both Dr. Fairley's opinion and the ALJ's
question to the VE indicate that Briand could climb ramps and
stairs occasionally, which seems to diminish the impact of the
contradiction in the ALJ's formal RFC finding.

**III. Discussion**

A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability. 42 U.S.C. §§ 423(a)(1)(A)-(D). To be eligible for supplemental security income, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets. 42 U.S.C. § 1382(a). The question in this case is whether Briand was under a disability from February 28, 2012, through June 16, 2014, the date of the ALJ's decision.

For the purpose of determining eligibility for disability insurance benefits,

> [t]he term "disability" means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A) (setting out a similar definition of disability for determining eligibility for SSI benefits). Moreover,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of

> whether such work exists in the immediate area in
> which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he
> applied for work. . . .

42 U.S.C. § 423(d)(2)(A) (pertaining to DIB); see also 42 U.S.C.

§ 1382c(a)(3)(B) (setting out a similar standard for determining

eligibility for SSI benefits).

To decide whether a claimant is disabled for the purpose of

determining eligibility for either DIB or SSI benefits, an ALJ

is required to employ a five step process.  See 20 C.F.R. §§

404.1520 (DIB) and 416.920 (SSI).

> The steps are: 1) if the [claimant] is engaged in
> substantial gainful work activity, the application is
> denied; 2) if the [claimant] does not have, or has not
> had within the relevant time period, a severe
> impairment or combination of impairments, the
> application is denied; 3) if the impairment meets the
> conditions for one of the "listed" impairments in the
> Social Security regulations, then the application is
> granted; 4) if the [claimant's] "residual functional
> capacity" is such that he or she can still perform
> past relevant work, then the application is denied; 5)
> if the [claimant], given his or her residual
> functional capacity, education, work experience, and
> age, is unable to do any other work, the application
> is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20

C.F.R. § 416.920).

The claimant bears the burden of proving that he is

disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  He

must do so by a preponderance of the evidence.  See Mandziej v.

Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v.

Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)).  However,

> [o]nce the [claimant] has met his or her burden at
> Step 4 to show that he or she is unable to do past
> work due to the significant limitation, the
> Commissioner then has the burden at Step 5 of coming
> forward with evidence of specific jobs in the national
> economy that the [claimant] can still perform.  Arocho
> v. Sec'y of Health & Human Servs., 670 F.2d 374, 375
> (1st Cir. 1982).

Seavey, 276 F.3d at 5 (parallel citations omitted).  Finally,

> [i]n assessing a disability claim, the [Commissioner]
> considers objective and subjective factors, including:
> (1) objective medical facts; (2) [claimant]'s
> subjective claims of pain and disability as supported
> by the testimony of the [claimant] or other witness;
> and (3) the [claimant]'s educational background, age,
> and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797

F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690

F.2d 5, 6 (1st Cir. 1982)).

B. Briand's Claims

Briand claims that the this case should be remanded because

the ALJ: (1) erred at step 2 by failing to say anything about

his chronic venous insufficiency and by failing to deem his

peripheral neuropathy to be a severe impairment; (2) made an

assessment of his RFC that was not supported by substantial

evidence; (3) failed to properly consider the opinion of Nurse

Aiston; and (4) erred in determining that he was capable of

performing the jobs of hand cutter, fast food worker, cleaner,
and price marker.  Taken in combination, claimant's second and
fourth arguments are persuasive and dispositive.

Claimant argues that the ALJ erred by failing to include a
limitation in his RFC based upon Dr. Fairley's uncontroverted
opinion that he needed to change positions from standing to
sitting once every half hour.  As a result of that error,
claimant argues that the VE's testimony – which was based upon a
hypothetical that did not include a sit/stand option – is not
substantial evidence that he can perform the jobs of hand
cutter, fast food worker, cleaner, and price marker.  The Acting
Commissioner responds by identifying evidence in the record that
would support a finding that Briand did not require a sit/stand
option in the first instance.  That argument does not save the
ALJ's decision.

To be sure, there are circumstances in which an ALJ does
not commit reversible error by ignoring a medical opinion that a
claimant requires a sit/stand option.  For example, in
MacDougall v. Astrue, the ALJ erred by ignoring two such
opinions, but the error was harmless because the record included
two other medical opinions that did not include such a
limitation, which meant that the ALJ's RFC finding, which
included no such limitation, was supported by substantial

evidence.  See No. 2:10-cv-400-GZS, 2011 WL 4566268, at *7 (D. Me. Sept. 29, 2011), report and recommendation adopted by 2011 WL 5024456 (D. Me. Oct. 20, 2011).  Here, however, there is no medical opinion without a sit/stand limitation that would support the lack of such a limitation in the ALJ's RFC.

There are also circumstances in which an ALJ may permissibly reject a medical opinion that includes a sit/stand limitation.  See, e.g., Gallupe v. Colvin, No. 1:12-cv-242-NT, 2013 WL 1775686, at *6-8 (D. Me. Mar. 28, 2013), report and recommendation adopted by 2013 WL 1775531 (D. Me. Apr. 24, 2013).  Here, however, the ALJ did not say anything about Dr. Fairley's opinion on Briand's need for a sit/stand opinion, much less reject it.  To the contrary, the ALJ gave "great weight" to Dr. Fairley's opinion.  Tr. 19.  The only argument in support of rejecting Dr. Fairley's opinion on the sit/stand limitation appears in the Acting Commissioner's memorandum of law.[7]  But, as Magistrate Judge Rich explained in a case with many similarities to this one:

> The administrative law judge provided no explanation whatsoever for rejecting that portion of Dr. Trumbull's RFC assessment pertaining to the need to stand and stretch a few minutes per hour.  To the contrary, he seemed to cite it with favor.  See Record

---

[7] Moreover, much of the evidence the Acting Commissioner relies on in that argument is drawn from the portion of the ALJ's decision in which he discusses the credibility of Briand's statements about his symptoms.

at 14.  Its omission could as plausibly have been an
oversight as a considered choice.  Although there is
evidence in the record favoring a finding that the
plaintiff required no sit-stand option, including the
Hayes RFC assessment, it is the job of the
administrative law judge, not the courts or the
commissioner's counsel on appeal, to resolve such
conflicts in the first instance.

Reitz v. Astrue, No. 1:10-cv-94-JAW, 2010 WL 5395051, at *4 (D.
Me. Dec. 22, 2010) (citing Rodriguez, 647 F.2d at 222), report
and recommendation adopted by 2011 WL 98317 (D. Me. Jan. 12,
2011); see also Dube v. Astrue, 781 F. Supp. 2d 27, 36 n.15
(D.N.H. 2011) ("In the motion before this court, counsel for the
Commissioner ably posits numerous reasons '[l]ending support to
the ALJ's disregard of Dr. Southworth's limitational
assessments.' . . .  It is the responsibility of the ALJ to
undertake that analysis in the first instance, not the court.").

In the absence of a proper consideration of Dr. Fairley's
sit/stand limitation, the ALJ's determination that Briand could
perform the jobs of hand cutter, fast wood worker, cleaner, and
price marker is not supported by substantial evidence.  All four
jobs are classified at the light exertional level, which
typically "requires a good deal of walking or standing, or . . .
includes sitting most of the time with some pushing or pulling
of arm or leg controls." 20 C.F.R. §§ 404.1567(b) & 416.968(b).
But, generally speaking, a "person [who] must alternate periods
of sitting and standing . . . is not functionally capable of

13

doing . . . the prolonged standing or walking contemplated for most light work."  Social Security Ruling ("SSR") 83-12, 1983 WL 31253, at *4 (1983).[8]

      Here, notwithstanding the general incompatibility between light work and a sit/stand option, the ALJ relied upon VE testimony elicited in response to a hypothetical that omitted the sit/stand limitation prescribed in the only medical opinion in the record.  Accordingly, this case must be remanded for: (1) a proper consideration of Dr. Fairley's opinion regarding Briand's need for a sit/stand option; and (2) VE testimony based upon a proper RFC assessment.  With regard to the ALJ's consideration of the sit/stand limitation, the court notes that on the current record, it is difficult to see how the ALJ could fashion an RFC that does not include that limitation, given: (1) the lack of any opinion that runs counter to Dr. Fairley's opinion on that issue; and (2) the general principle that it is impermissible for an ALJ to reject a medical opinion and replace it with an opinion based upon his or her own interpretation of the medical evidence.  See Nguyen v. Chater, 172 F.3d 31, 35

---

[8] SSR 83-12 goes on to note that "[p]ersons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work," id. at *4, but given Dr. Fairley's opinion that Briand needs to change position every half hour, the foregoing caveat has no applicability to this case.

(1st Cir. 1999) (directing district court to remand where ALJ formulated RFC that contradicted the only opinion of record given by acceptable medical source); see also McLaughlin v. Colvin, No. 14-cv-154-LM, 2015 WL 3549063, at *5 (D.N.H. June 8, 2015); Littlefield v. Colvin, No 14-cv-53-LM, 2015 WL 667641, at *6 (D.N.H. Feb. 17, 2015).

### IV. Conclusion

For the reasons given, the Acting Commissioner's motion for an order affirming her decision, document no. 11, is denied, and Briand's motion to reverse that decision, document no. 9, is granted to the extent that the case is remanded to the Acting Commissioner for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

June 30, 2015

cc:   Janine Gawryl, Esq.
      Michael T. McCormack, Esq.